UNITED STATES DISTRICT COURT

NEW JERSEY DISTRICT COURT

| | |
|---|---|
| NORRIS HITE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>　　　　Plaintiff,<br>v.<br><br>LUSH COSMETICS, LLC.,<br><br>　　　　Defendant. | Case No. _____<br><br>CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiff NORRIS HITE ("Plaintiff"), individually and on behalf of all others similarly situated, makes the following allegations based on her personal knowledge of her own acts and, otherwise, upon information and belief including based on investigation of counsel.

### NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, by and through undersigned counsel, brings this action both on her own behalf and on behalf of the class defined below, comprised of all individuals similarly situated within the State of New Jersey, to redress the unlawful commercial practices employed by Defendant Lush Cosmetics, LLC. (hereinafter "Defendant") regarding unlawful terms and conditions displayed on Defendant's website, www.lushusa.com. Specifically, and as detailed more fully below, Defendant's website contains a consumer contract (entitled "Terms of Use") that purports to impose illegal, exculpatory and other such provisions upon all users of that website and purports to nullify certain legal duties and responsibilities Defendant owes its consumers.

2. Defendant has imposed the unfair, one-sided provisions in its Terms & Conditions in violation of certain statutory and common law standards and New Jersey's Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"), *N.J.S.A.* 56:12-14 *et seq.*

1

## PARTIES

3. Plaintiff Norris Hite is an individual adult resident and citizen of Atlantic County, New Jersey, and is a member of the Class alleged herein.

4. Plaintiff purchased Defendant's "Hand of Friendship" product through Defendant's website, www.lushusa.com, on or about February 17, 2016. Plaintiff and Class Members are "consumers" and/or "prospective consumers" as defined by *N.J.S.A.* 56:12-15.

5. Defendant Lush Cosmetics, LLC., is a corporation with its principal place of business located at Unit 110 – 8365 Ontario Street, Suite 120, Vancouver, British Columbia V5X38, with another location at 8668 Cambie Street, Vancouver, British Columbia V6P 6M6. Defendant is a "seller" as described in *N.J.S.A.* 56:12-15. As such, Defendant is a citizen of British Columbia, Canada.

6. At all relevant times, Defendant sold products by means of its website, www.lushusa.com, in the State of New Jersey, utilizing unfair, one-sided provisions contained in its "Terms of Use" consumer contract which violate New Jersey law.

7. Defendant markets its goods and services throughout the State of New Jersey by means of its website. As such, New Jersey courts maintain a significant interest in regulating Defendant's conduct which emanates from New Jersey.

## JURISDICTION AND VENUE

8. Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d), because members of the proposed Class are citizens of states different from Defendant's home nation and province, there are more than 100 Class Members, and the amount-in-controversy exceeds $5,000,000 exclusive of interest and costs.

9. This Court has jurisdiction over the Defendant named herein because Defendant has sufficient minimum contacts with New Jersey and/or otherwise intentionally avails itself of the laws and markets of New Jersey, through the promotion, sale, marketing and distribution of its goods and services in New Jersey, to render the exercise of jurisdiction by the New Jersey courts permissible.

10. Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant's improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district, because Defendant has caused harm to Class Members residing in this district, and/or because the Defendant is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

11. Defendant markets a variety of cosmetic products throughout the State of New Jersey, via its website, www.lushusa.com.

12. Plaintiff and Class Members purchased products from Defendant's website and/or were prospective consumers otherwise displayed and/or offered the "Terms of Use" on Defendant's website. Their rights with respect to products were purportedly governed by a website document entitled "Terms of Use."

13. The "Terms of Use" purport to be a binding agreement between Defendant and all parties who use the website and/or purchase any of the products available on Defendant's website, as shown below.

> **If You Want to Use This Site,**
> then carefully read these entire Terms (including all links to details), as they constitute a written agreement between you and us and they affect your legal rights and obligations. Each time you access and/or use the Site (other than to simply read these Terms), you agree to be bound by and comply with these Terms and any Additional Terms (defined below) then posted. ***Therefore, do not use this Site if you do not agree.***

14.     The representatively binding provisions in the "Terms of Use" purport to impose illegal conditions upon customers who visit Defendant's website and/or purchase products from the site.

15.     Despite clear law to the contrary, Defendant's Terms of Use purport to deprive Plaintiffs of their legal right to pursue a remedy for harms arising from Defendant's tortious acts. Similarly, the Terms of Use purport to absolve Defendant of its responsibility to refrain from creating an unreasonable risk of harm to consumers and protecting against the unlawful acts of third parties.

16.     The Terms of Use also purport to absolve Defendant from any liability for manufacturing or selling dangerous or substandard products. Likewise, under the Terms of Use, it appears that Plaintiffs are inappropriately barred and/or limited in seeking damages for injuries occurring from Defendant's unsafe products.

17.     All of these provisions violate the TCCWNA.

A. Terms and Conditions Which Purport to Exculpate Defendant From Liability for Any and All Tortious Actions and Purport to Deny Plaintiffs Grounds for Redress Violate the TCCWNA.

18.     New Jersey law specifically prohibits the type of exculpatory clause contained in Defendant's "Terms of Use". Exculpatory provisions are disfavored by New Jersey law because "they undermine one purpose of tort law, which is to deter careless behavior by a party in the best position to prevent injuries in the first place." *See Martinez-Santiago v. Public Storage*, 38 F.Supp.3d 500, 512-513 (D.N.J. 2014) ("[h]ere, the exculpatory provision purports to hold [defendant] harmless for most losses incurred by consumers, except those that are the direct result of [defendant's] fraud or willful conduct. Although Plaintiff plausibly pleads that such a broad exculpatory provision is not permitted under New Jersey law, the provision purports to be

4

enforceable in the lease agreement. Plaintiff states a valid claim that this is the kind of provision that TCCWNA was designed to address."); *see also Marcinczyk v. State of N.J. Police Training Comm'n*, 203 N.J. 586, 593 (2010).

19. Defendant purports to disclaim all liability:

"UNDER NO CIRCUMSTANCES WILL ANY LUSH PARTIES BE RESPONSIBLE OR LIABLE FOR ANY LOSS OR DAMAGES OF ANY KIND, including personal injury or death or for any direct, indirect, economic, exemplary, special, punitive, incidental, or consequential losses or damages that are directly or indirectly related to:
  a. the Site (including the Content and the User-Generated Content);
  b. your use of or inability to use the Site, or the performance of the Site;
  c. any action taken in connection with an investigation by Lush Parties or law enforcement authorities regarding your access to or use of the Site;
  d. any action taken in connection with copyright or other intellectual property owners or other rights owners;
  e. any errors or omissions in the Site's technical operation; or
  f. any damage to any user's computer, hardware, software, modem, or other equipment or technology, including damage from any security breach or from any virus, bugs, tampering, fraud, error, omission interruption, defect, delay in operation or transmission, computer line, or network failure or any other technical or other malfunction, including losses or damages in the form of lost profits, loss of goodwill, loss of data, work stoppage, accuracy of results, or equipment failure or malfunction.

"The foregoing limitations of liability will apply even if any of the foregoing events or circumstances were foreseeable and even if Lush Parties were advised of or should have known of the possibility of such losses or damages, regardless of whether you bring an action based in contract, negligence, strict liability, or tort (including whether causes, in whole or in part, by negligence, acts of god [sic], telecommunications failure, or destruction of the Site).

"Some jurisdictions do not allow the exclusion or limitation of incidental or consequential damages of the sort that are described above, so the above limitation or exclusion may not apply to you.

**"EXCEPT AS MAY BE PROVIDED IN ANY ADDITIONAL TERMS, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL LUSH PARTIES' TOTAL LIABILITY TO YOU, FOR ALL POSSIBLE DAMAGES, LOSSES, AND CAUSES OF ACTION IN CONNECTION WITH YOUR ACCESS TO AND USE OF THE SITE AND YOUR RIGHTS UNDER THESE TERMS, EXCEED AN AMOUNT EQUAL TO THE AMOUNT YOU HAVE PAID LUSH IN CONNECTION WITH**

> THE TRANSACTION(S) THAT UNDERLIE THE CLAIM(S); PROVIDED, HOWEVER, THIS PROVISION WILL NOT APPLY IF A TRIBUNAL WITH APPLICABLE JURISDICTION FINDS SUCH TO BE UNCONSCIONABLE."

These provisions purport to bar Plaintiffs from asserting any cause of action against Defendant for its negligence or failure to exercise a basic standard of care in its dealings with consumers and/or prospective consumers. Likewise, the provision purports to absolve Defendant of its legal responsibility to exercise reasonable care and avoid creating an unreasonable risk of harm to consumers.

20. Under well-established New Jersey law Defendant owes a duty of care to Plaintiffs to avoid creating an unreasonable risk of harm. Plaintiffs harmed by Defendant's unreasonable conduct are entitled to collect damages. This provision purports to remove Defendant's responsibility to act reasonably and purports to bar Plaintiffs from redress for a breach of Defendant's standard of care. This provision is contrary to New Jersey law. *See, e.g. Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 448 (1993).

21. As such, the exculpatory clause violates the TCCWNA.

B. <u>Terms and Conditions Which Purport to Deny Rights, Responsibilities and Remedies Under the New Jersey Products Liability Act ("NJPLA") Violate the TCCWNA.</u>

22. Additionally, the above-referenced and quoted provision purports to absolve Defendant of its responsibility to manufacture and sell safe products. The provision further purports to bar Plaintiffs from exercising their legal right to seek redress under the NJPLA. *See, N.J.S.A.* 2A:58C-1, *et al.*

23. The NJPLA was passed based on Legislative findings "that there is an *urgent need* for remedial legislation to establish clear rules with respect to certain matters relating to actions for damages for harm caused by products, including certain principles under which liability is

6

imposed and the standards and procedures for the award of punitive damages." *N.J.S.A.* 2A:58C-1 (emphasis added).

24. Under the NJPLA, "[a] manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: (a.) deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or (b.) failed to contain adequate warnings or instructions, or (c.) was designed in a defective manner." *N.J.S.A.* 2A:58C-2.

25. Plaintiffs who prevail under the NJPLA are entitled to recover any and all damages resulting from their injury, including punitive damages if properly demonstrated. *See e.g. N.J. Civ. Jury Charge* 1.12(O); *Fischer v. Johns-Manville Corp.*, 103 *N.J.* 643, 670-71 (1986) ("punitive damages are available in . . . strict products liability actions when a manufacturer is (1) aware of or culpably indifferent to an unnecessary risk of injury, and (2) refuses to take steps to reduce that danger to an acceptable level. This standard can be met by a showing of 'a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences.'") (internal citations omitted).

26. Given the clear danger of unsafe products as recognized by the New Jersey Legislature, to purport to deny consumers a cause of action for harm arising from a potentially unsafe product is contrary to established New Jersey law. Additionally, there would be a chilling effect if consumers and prospective consumers were led to believe such exculpatory provisions are enforceable. Defendant would be able to purport to contract away its statutorily fixed obligation to refrain from producing dangerous products. Likewise, Plaintiffs would mistakenly believe they

7

are barred from seeking relief for serious injury arising from defective products. This would result in a reduction in costs for unscrupulous manufacturers and sellers while companies creating safe products would be burdened with a higher cost of doing business. The ultimate effect would be a proliferation of unsafe products and injured consumers believing they have no grounds for redress. Clearly, this was not the Legislature's intent when the NJPLA was enacted.

27. It *was*, however, the Legislature's intent in drafting the TCCWNA to prevent against this type of harm. A provision that purports to absolve Defendant of liability in contract, tort, or otherwise resulting from its dangerous products is unlawful. Plaintiffs have a legal right under the NJPLA to bring suit against manufacturers and sellers of dangerous products. Likewise, Defendant has a statutorily imposed duty to refrain from introducing dangerous products into the marketplace and is liable for same.

28. These "Terms of Use" therefore violate the TCCWNA.

C. Terms and Conditions Which Purport to Deny Rights, Responsibilities and Remedies Under the New Jersey Punitive Damages Act ("NJPDA") Violate the TCCWNA.

29. Additionally, Defendant purports to deprive Plaintiffs of their remedies under the NJPDA. *N.J.S.A.* 2A:15-5.9 *et seq*.

30. As set forth above, Defendant represents that persons using its website are barred from seeking redress against "LUSH PARTIES … FOR ANY LOSS OR DAMAGES OF ANY KIND, including personal injury or death or for any direct, indirect, economic, exemplary, special, punitive, incidental, or consequential losses or damages" for harm caused by its products or services.

31. This language purports to take away Plaintiffs clearly established right under the NJPDA to pursue punitive damages against defendants who with actual malice or wanton and willful disregard cause harm to foreseeable plaintiffs. *N.J.S.A.* 2A:15-5.12.

8

32. Plaintiffs' right to pursue punitive damages against defendants who are recklessly indifferent to the consequences of harm to others is dually well recognized by New Jersey common law. *See, e.g. Smith v. Whitaker*, 160 N.J. 221, 241 (1999); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 49 (1984); *see also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)(noting that to justify punitive damages award defendant's conduct must be reckless); *DiGiovanni v. Pessel*, 55 N.J. 188, 190 (1970)(noting punitive damages may be justified by defendant's "conscious and deliberate disregard of the interests of others")(*quoting* William Prosser, *Handbook on the Law of Torts* § 2 (2d ed. 1955)).

33. A provision that purports to bar Plaintiffs from exercising their rights under the NJPDA is therefore unlawful. Likewise, such a provision is shocking to the conscience in that it purports to absolve Defendant of its duty to refrain from willfully and/or recklessly creating an unreasonable risk of harm to others. Indeed, under Defendant's Terms of Use "even if Lush Parties were advised of or should have known of the possibility of such losses or damages, regardless of whether you bring an action based in contract, negligence, strict liability, or tort" it purports not to be liable for any punitive damages.

34. This provision purports to insulate Defendant even if an accusation of punitive damages is specifically pled in a complaint as required by *N.J.S.A.* 2A:15-5.11 and Defendant is expressly made aware its conduct is malicious or willfully and/or wantonly reckless.

35. Such a provision is unlawful under the NJPDA in that it purports to deny Plaintiffs their legal rights under the Act. Additionally the provision purports to absolve Defendant of any accountability in the form of punitive damages even if expressly made aware that its conduct is expressly malicious or wantonly and/or willfully reckless.

36. This provision thereby violates the TCCWNA.

D. Terms and Conditions Which Purport to Deny Rights, Responsibilities and Remedies Under the Uniform Commercial Code ("U.C.C.") Violate the TCCWNA

37. Defendant purports to bar Plaintiffs from asserting any "action based in contract, negligence, strict liability, or tort" for damages arising from the use of Defendant's products and services.

38. This provision purports to deny Plaintiffs their rights and remedies under the U.C.C. to recover damages for economic harm and/or harm to property.

39. The NJ U.C.C. provides "a comprehensive system for determining the rights and duties of buyers and sellers with respect to contracts for the sale of goods[.]" *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 116 (D.N.J. 2007); *N.J.S.A.* 12A:1-101, *et seq.*

40. Buyers who purchase commercial goods from merchants have a litany of remedies under the N.J. U.C.C. when a seller breaches his or her duty. These remedies include damages for economic and property damage. *N.J.S.A.* 12A:2-701, *et seq*; *Spring Motors Distributors, Inc. v. Ford Motor Co.*, 98 N.J. 555, 581-82 (1985) ("the U.C.C. 'is generally regarded as the *exclusive source* for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself.'") (quoting W. Prosser & W. Page Keeton, *Handbook of the Law of Torts* § 97 at 680 (5th ed. 1984)).

41. Defendant purports to strip Plaintiffs' of their legal rights under the U.C.C. to seek damages for a breach of contract claim against Defendant. Additionally, this provision purports to absolve Defendant of its responsibility to refrain from breaching contract agreements and/or causing property and/or economic harm to Plaintiffs under the U.C.C.

42. This clause is thereby unlawful and violates the TCCWNA.

E. Terms and Conditions Which Purport to Require Plaintiff and Class Members to Indemnify Defendant and its Personnel Violate the TCCWNA.

43. Under New Jersey law, it is "clearly established that 'a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms.'" *Martinez-Santiago v. Public Storage*, 38 F. Supp. 3d 500, 516 (D.N.J. 2014) (quoting *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*, 103 N.J. 177, 191 (1986)); *Castro v. Sovran Self Storage, Inc.*, 2015 WL 4380775, at *9-*10 (D.N.J. July 16, 2015) (citing *Martinez-Santiago*).

44. Defendant's "Terms of Use" require Plaintiff and Class Members to:

"defend, indemnify, and hold Lush Parties harmless from and against any and all claims, damages, losses costs, investigations, liabilities, judgments, fines, penalties, settlements, interest, and expenses (including attorneys' fees) that directly or indirectly arise from or are related to any claim, suit, action, demand, or proceeding made or brought against any Lush Party, on account of the investigation, defense, or settlement thereof, arising out of or in connection with, whether occurring heretofore or hereafter: (i) your User-Generated Content; (ii) your use of the Site and your activities in connection with the Site; (iii) your breach or alleged breach of these Terms or any Additional Terms; (iv) your violation or alleged violation of any laws, rules, regulations, codes, statutes, ordinances, or orders of any governmental or quasi-governmental authorities in connection with your use of the Site or your activities in connection with the Site; (v) information or material transmitted through your Device, even if not submitted by you, that infringes, violates, or misappropriates any copyright, trademark, trade secret, trade dress, patent, publicity, privacy, or other rights of any person or entity; (vi) any misrepresentation made by you; and (vii) Lush Parties' use of the information that you submit to us (including your User-Generated Content) (all of the foregoing, **"Claims and Losses"**). You will cooperate as fully required by Lush Parties in the defense of any Claims and Losses. Notwithstanding the foregoing, Lush Parties retain the exclusive right to settle, compromise, and pay any and all Claims and Losses. Lush Parties reserve the right to assume the exclusive defense and contract of any Claims and Losses. You will not settle any Claims and Losses without, in each instance, the prior written consent of an office of a Lush Party."

45. This language purports to go much further than the provision in *Ramos*, and plainly violates the TCCWNA.

11

F. <u>Terms and Conditions Which Purport to Remove Defendant's Responsibility for Certain Acts of Third Parties and Purport to Bar Plaintiff's Grounds for Redress Violate the TCCWNA</u>

46. The "Terms of Use" violate New Jersey law in that they purport to absolve Defendant of their duty to protect customers against harm arising from third-party acts. *See, e.g. Butler v. Acme Markets, Inc.*, 89 *N.J.* 270, 284 (1982) (upholding duty imposed on business owner to protect against third-party criminal acts since, "the business invitor is in the best position to provide either warnings or adequate protection for its patrons…[and] the public interest lies in providing a reasonably safe place for a patron to shop[.]"); *Trentacost v. Brussel*, 82 *N.J.* 214, 231 (1980) (landlord owes duty to tenant to provide reasonable security measures protecting against criminal acts of third-parties).

47. Defendants have a clear duty under the common law to provide a safe environment for their customers to shop. *See, Butler*, 89 *N.J.* at 284. The fact that Defendants sell their products online should not absolve them of their well-defined duty to protect customers from the criminal acts of third-parties. Indeed, in today's modern-society the internet has become the shopping mall and third-party computer hackers the pickpockets.[1]

48. The Federal Trade Commission ("FTC") and Federal Communications Commission ("FCC") have promulgated standards for businesses to safeguard against the disclosure of sensitive consumer information to third-party criminal hackers. According to the FTC, "it is almost impossible to be in business and not collect or hold personally identifying information — names and addresses, Social Security numbers, credit card numbers, or other

---

[1] Practical Law, *Date Protection in [the] United States: Overview*, http://us.practicallaw.com/6-502-0467#a762707 ("The proliferation of security breaches in recent years has led to an expansion of . . . privacy laws, regulations and guidelines which is becoming one of the fastest growing areas of legal regulation.").

account numbers — about your customers, employees, business partners, students, or patients. If this information falls into the wrong hands, it could put these individuals at risk for identity theft."[2] Accordingly, the FTC instructs business owners to take safeguards to prevent against the disclosure of customer information to criminal third-parties and to follow state and federal notification requirements if and/when a breach occurs. *Id.*

49. Likewise, the FCC, in connection with the Department of Homeland Security, the National Cyber Security Alliance and The Chamber of Commerce promulgates a set of standards for business owners to follow to protect consumer information from third-party criminal hackers. Namely, according to the FCC, businesses are under an obligation "to do more to protect against growing cyber threats."[3] How a business "handle[s] and protect[s] . . . data is central to the security of [the] business and the privacy expectations of customers, employees and partners." *Id.* at PDS-1. Under the FCC's guidelines "[a]ll companies should develop and maintain clear and robust policies for safeguarding critical business data and sensitive information[.]" *Id.* at PDMI-1.

50. Indeed, the FCC explicitly acknowledges, "[p]rivacy is important for your business and your customers. Continued trust in your business practices, products and secure handling of your clients' unique information impacts your profitability. Your privacy policy is a pledge to your customers that you will use and protect their information in ways that they expect and that adhere to your legal obligations . . . [c]ustomers . . . expect you to make their privacy a priority . . . you will be held accountable for what you claim and offer in your policy." *Id.* at PDS-2. Indeed, emerging technology offers "cyber criminals many new ways to victim your business, scam your

---

[2] Federal Trade Commission, *Information Compromise and the Risk of Identity Theft: Guidance for Your Business* (2004), https://www.ftc.gov/tips-advice/business-center/guidance/information-compromise-risk-identity-theft-guidance-your.

[3] Federal Communications Commission, *Cyber Security Planning Guide*, https://transition.fcc.gov/cyber/cyberplanner.pdf.

customers and hurt your reputation." *Id.* at SF-1. As such, business owners are directed to implement various action items including training plans for employees, protections against online fraud, protections against malware and fake antivirus offers and other malicious software. *Id.* at SF-1 to SF-3.

51. In no uncertain terms, the FCC warns business owners of the consequences of failing to take proper security measures to protect against third-party criminal acts:

> Website security is more important than ever. Web servers, which host the data and other content available to your customers on the Internet, are often the most targeted and attacked components of a company's network. Cyber criminals are constantly looking for improperly secured websites to attack, while many customers say website security is a top consideration when they choose to shop online. As a result, it is essential to secure servers and the network infrastructure that supports them. The consequences of a security breach are great: loss of revenues, damage to credibility, *legal liability* and loss of customer trust.

*Id.* at WS-1. Additionally, the FCC endorses the use of Operational Security measures to identify critical protected information, analyze threats to and vulnerability of that information and countermeasures available to mitigate those threats. *Id.* at OS-1. Explicitly, the FCC relays that if a business "accepts payments by credit or debit card[s], it is important to have security steps in place to ensure . . . customer information is safe." *Id.* at PC-1.

52. With these standards in mind, the United States District Court, District of New Jersey recently upheld a claim against business owners who failed "to implement reasonable and appropriate security measures" protecting their online clients' information from data breaches effectuated by third-party hackers. *F.T.C. v. Wyndham Worldwide Corp.,* 10 *F.Supp.3d* 602, 608-09 (D.N.J. 2014) (denying defendant online hotel company's motion to dismiss and agreeing with the FTC that online companies' substandard online security measures were cause in fact of plaintiffs' injuries – despite intervening acts of third-party hackers.).

53. Additionally, the New Jersey Legislature has devoted an entire statutory regime towards regulating online businesses safeguarding of customers' personal information from third-party criminal hackers. *See N.J.S.A.* 56:8-161, *et seq*. Failure to comply with the statutory mandates and take proper safeguards to notify and protect against the dissemination of customers' personal information – even if disclosed as the result of third-party criminal acts – is a tortious offense and actionable under the New Jersey Consumer Fraud Act. *N.J.S.A.* 56:8-3; 56:8-3.1.

54. Despite the controlling statutes, common law and FTC and FCC guidelines, Defendant purports to absolve itself of the responsibility to take reasonable measures and statutorily fixed measures to protect consumers from third-party criminal hackers.

55. Defendant includes in its "Terms of Use" the language, "any damage to any user's computer, hardware, software, modem, or other equipment or technology, including damage from any security breach or from any virus, bugs, tampering, fraud, error, omission interruption, defect, delay in operation or transmission, computer line, or network failure or any other technical or other malfunction, including losses or damages in the form of lost profits, loss of goodwill, loss of data, work stoppage, accuracy of results, or equipment failure or malfunction."

56. The Legislature, Courts and Regulatory Agencies have identified steps Defendants are required to take to protect consumers from harms perpetuated by third-party criminals. The above language purports to absolve Defendants of these aforementioned responsibilities. Likewise, the provision purports to bar Plaintiffs from seeking redress under the common law or *N.J.S.A.* 56:8-161, *et al.* for Defendants failure to protect against third-party criminal acts.

57. Defendants have a duty to take reasonable steps to prevent harm to consumers and prospective consumers arising from third-party criminal acts. Plaintiffs have a means of redress

for Defendants failure to take steps to protect against harms perpetuated by third-party criminals. This clause purports to take away these rights and responsibilities and thus violates the TCCWNA.

G. Defendant's "Terms of Use" Violates New Jersey Law Regarding Statutes of Limitation

58. Defendant's "Terms of Use" states that "if you or we want to assert a dispute…then you or we must commence it…within one (1) year after the dispute arises – or it will be forever barred."

59. This provision purports to strip Plaintiffs' of their legal right to bring a claim against defendant within the time periods established by the New Jersey Legislature.

60. In New Jersey the statute of limitations for a breach of contract claim in the sale of goods is four years. *N.J.S.A.* 12A:2-725.

61. The statute of limitations for a breach of warranty claim is four years. *N.J.S.A.* 12A:2-725.

62. The statute of limitations for a consumer protection claim is six years. *N.J.S.A.* 2A:14-1.

63. The statute of limitations for a products liability claim is two years. *N.J.S.A.* 2A:14-2.

64. Defendant's "Terms of Use" purport to shorten the statute of limitations for all claims, including, but not exclusive to the aforementioned, to a term of only one year.

65. This provision is contrary to well established statutory law and purports to deprive Plaintiffs' of their right to bring a claim for damages after the one year term set forth in Defendant's terms.

66. This provision thus violates the TCCWNA.

H. **Defendant's "Terms of Use" Violate** *N.J.S.A.* 56:12-15

67.  New Jersey consumer protection laws, including the TCCWNA, are designed to protect consumers and potential consumers from the type of unconscionable and illegal provisions contained in Defendant's "Terms of Use" as set forth above.

68.  Defendant's imposition upon consumers and prospective consumers of the above-described provisions in its "Terms of Use" violates certain common law standards and statutory provisions, including, but not limited to the New Jersey Product Liability Law, New Jersey Punitive Damages Act Uniform Commercial Code, *N.J.S.A.* 12A: 2-725, *N.J.S.A.* 2A:14-1, and *N.J.S.A.* 2A:14-2, and thus violates TCCWNA, most particularly *N.J.S.A.* 56:12-15.

69.  Plaintiff therefore brings the statutory claim alleged herein to halt Defendant's continued use of the illegal language in its disclaimers of liability provisions included in the "Terms of Use" on Defendant's website, and to impose those remedies provided for in the TCCWNA.

I. **Defendant's "Terms of Use" Violates** *N.J.S.A.* 56:12-16

70.  *N.J.S.A.* 56:12-16 (TCCWNA) states that "no consumer contract, notice or sign shall state that any of its provisions is or may be void, unenforceable or inapplicable in some jurisdictions without specifying which provisions are or are not void, unenforceable or inapplicable within the State of New Jersey[.]"

71.  The "Terms of Use" contains language stating that "some jurisdictions do not allow the exclusion or limitation of incidental or consequential damages…so the above limitation or exclusion may not apply to you."