IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORRIS HITE, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | |
| | Civil Action |
| v. | No. 16-1533 (JBS/AMD) |
| LUSH INTERNET INC., | **OPINION** |
| Defendant. | |

APPEARANCES:

Gerald H. Clark, Esq.
Clark Law Firm, PC
811 Sixteenth Avenue
Belmar, NJ 07719
     Attorney for Plaintiff

Geoffrey W. Castello, III, Esq.
Kelley Drye & Warren LLP
One Jefferson Road
2nd Floor
Parsippany, NJ 07054
     Attorney for Defendant


**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

     In this case, Plaintiff Norris Hite alleges that the "Terms

of Use" on the website of Defendant Lush Internet, Inc. ("Lush")

constitute a consumer contract with exculpatory provisions that

violate the New Jersey Truth in Consumer Contract, Warranty and

Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 et seq., and other New

Jersey laws. Defendant now moves to compel arbitration and

strike Plaintiff's class action allegations, stay the action pending arbitration, and in the alternative and to dismiss the amended complaint with prejudice under Fed. R. Civ. P. 12(b)(6). [Docket Item 8.] For the reasons that follow, the Court will deny Defendant's motion to compel arbitration and grant Defendant's motion to the extent it seeks to dismiss the Amended Complaint with prejudice.

## II.  BACKGROUND[1]

The facts in this case, as alleged in the Amended Complaint, are straightforward. Defendant Lush sells cosmetics on the internet. Plaintiff visited Defendant's website on or about February 17, 2016, and purchased one of Defendant's cosmetic products. (Amended Complaint [Docket Item 3-1] ¶ 4.) Plaintiff does not allege she has any claim about the product that she purchased, such as fraud, product liability or tort. Her quarrel is with the provisions of the terms of use of the website which appeared elsewhere on the site. Defendant's website contains the following "Terms of Use," which are

---

[1] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiff's Amended Complaint, documents explicitly relied upon in the Amended Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).  The Third Circuit has explained that "'[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (internal citation omitted).

accessible only through a hyperlink at the bottom of the site's homepage. (Screenshot of lushusa.com homepage, Exhibit 1 to Plaintiff's Brief in Opposition to Motion to Compel [Docket Item 11-4]; <u>see also</u> Defendants' Brief in Support of Motion to Compel [Docket Item 9] at 24.) Nothing about the compulsory nature of the Terms of Use appears on the homepage unless the user finds the hyperlink. The parties do not dispute that at the bottom line of each webpage appears the legend in the smallest print on the page that reads "© 2002-2016 LUSH North America. View our <u>Terms of Use</u> and <u>Privacy Policy.</u>" (See Ex. A to Def. Br. at p. 11; Ex. 1 to Pl. Request for Judicial Notice [Docket Item 11-4 and 11-7.])[2] At the top of the linked page, the Terms of Use advise users:

---

[2] Defendant does not object to the Court's consideration of these documents, including Plaintiff's own Declaration [Docket Item 11-3], in which Norris Hite indicates she was unaware of the existence of the Terms of Use, its arbitration provision and its class action waiver, and she did not read them, a point which Defendant indeed picks up on in its Reply Brief, arguing "Plaintiff admits in a declaration submitted in her opposition that she did not even read nor attempt to access the Terms of Use ("TOUs") on Lush's website about which she complains." Def. Rep. Br. at 1. Similarly, Defendant addresses the Hite Declaration further by arguing "Plaintiff certainly cannot claim that she was aggrieved because of the TOUs because she was not even <u>aware</u> of them. (Hite Decl. ¶ 11.)" Def. Rep. Br. at 3-4. Neither party has suggested that, by referring to matters outside the pleadings, the Rule 12(b)(6) motion should be converted to a summary judgment motion. Indeed, the webpages at issue are referred to in the amended complaint and neither party doubts their authenticity. Moreover, the Hite Declaration, while lying beyond the amended complaint, is confirmatory of Hite's allegations therein of her lack of knowledge and assent, and

> **If You Want to Use This Site,**
> then carefully read these entire Terms (including all
> links to details), as they constitute a written
> agreement between you and us and they affect your legal
> rights and obligations. Each time you access and/or use
> the Site (other than to simply read these Terms), you
> agree to be bound by and comply with these Terms and any
> Additional Terms (defined below) then posted. *Therefore,
> do not use the Site if you do not agree.*

(Terms of Use, Exhibit A to Defendants' Brief in Support of

Motion to Compel [Docket Item 9] at 1 (formatting in original).)

There is no opportunity, on the homepage or the hyperlinked

Terms, for the user to indicate he or she has read and accepts

the terms.

Plaintiff generally alleges that the exculpatory clauses

contained in the Terms of Use violate Sections 15 and 16 of the

TCCWNA because they unlawfully disclaim all tort liability and

purport to absolve Defendant of its duty to protect customers

against harm arising from third-party acts, and because they

limit consumers' rights under the New Jersey Products Liability

Act, New Jersey Punitive Damages Act, and the New Jersey Uniform

Commercial Code. The following specific section of the Terms is

relevant to the instant motion:

> **12. Dispute Resolution**
> B. **Binding Arbitration.** If we cannot resolve a Dispute
> set forth in Section 12(A) (or agree to arbitration in

---

again Defendant is content to have it received with the record
and make arguments based on Plaintiff's own words. Def. Rep. Br.
at 1, 3-4, 8, 12, 14-15. Therefore, for the purposes of this
Rule 12(b)(6) motion, these attached documents will be deemed
authentic and correct, raising no factual dispute.

writing with respect to an Excluded Dispute) within sixty (60) days of receipt of the notice, then ANY AND ALL DISPUTES ARISING BETWEEN YOU AND LUSH MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION. THIS INCLUDES ANY AND ALL DISPUTES BASED ON ANY PRODUCT, SERVICE OR ADVERTISING CONNECTED TO THE PROVISION OR USE OF THE SITE (WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE, TORT – INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, FRAUD, ANY OTHER INTENTIONAL TORT OR COMMON LAW, CONSTITUTIONAL PROVISION, RESPONDEAT SUPERIOR, AGENCY OR ANY OTHER LEGAL OR EQUITABLE THEORY – AND WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THESE TERMS. The Federal Arbitration Act ("FAA") shall govern the arbitrability of all disputes between Lush and you regarding these Terms (and any Additional Terms) and the Site, including the No Class Action Matters section below. BY AGREEING TO ARBITRATE, EACH PARTY IS GIVING UP ITS RIGHT TO GO TO COURT AND HAVE ANY DISPUTE HEARD BY A JUDGE OR JURY. Lush and you agree, however, that the State of California or federal law shall apply to and govern, as appropriate, any and all claims or causes of action, remedies, and damages arising between you and Lush regarding these Terms and the Site, whether arising in contract, statute, common law, or any other legal theory, without regard to the State of California's choice of law principles. . . .
C. **Limited Time to File Claims.** TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IF YOU OR WE WANT TO ASSERT A DISPUTE (BUT NOT AN EXCLUDED DISPUTE) AGAINST THE OTHER, THEN YOU OR WE MUST COMMENCE IT (BY DELIVERY OF WRITTEN NOTICE AS SET FORTH IN SECTION 12(A)) WITHIN ONE (1) YEAR AFTER THE DISPUTE ARISES – OR IT WILL BE FOREVER BARRED. . . .
E. **No Class Action Matters.** YOU AND LUSH AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING OR AS AN ASSOCIATION. . . .
G. **Small Claims Matters Are Excluded from Arbitration Requirement.** Notwithstanding the foregoing, either of us may bring qualifying claim of Disputes (but not Excluded Disputes) in small claims court of competent jurisdiction.

(Terms of Use at 7-9.) Plaintiff states that she did not read, and was not aware of, the Terms of Use of Lush's website at the

time she made her purchase. (Declaration of Norris Hite in Support of her Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration [Docket Item 11-3] at ¶¶ 4-6.)

The motion is fully briefed, and the Court will decide without holding oral argument. Fed. R. Civ. P. 78(b).

## III. STANDARD OF REVIEW

### A. Motion to Compel Arbitration

In the Third Circuit, when a party moves to compel arbitration based on the terms of an agreement, courts apply a two-tier standard of review. See Guidotti v. Legal Helpers, 716 F.3d 764 (3d Cir. 2013). Where it is apparent on the face of the complaint, or in documents relied upon in the complaint, that the claims at issue in the case are subject to arbitration, the case is considered under a motion to dismiss standard, Fed. R. Civ. P. 12(b)(6). Id. at 774-76. However, where the complaint does not establish on its face that the parties have agreed to arbitrate, or where the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, then the parties are entitled to limited discovery on the question of arbitrability before a renewed motion to compel arbitration is decided on a summary judgment standard. Id.

### B. Motion to Dismiss

6

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

7

IV.  **DISCUSSION**

  **A. Defendant's Motion to Compel Arbitration**

First, Defendant seeks to compel arbitration of Plaintiff's dispute, strike the class action allegations, and stay this federal action pursuant to Section 12 of the Terms of Service, which requires that "ANY AND ALL DISPUTES ARISING BETWEEN YOU AND LUSH MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION" or adjudication in small claims court. (Terms of Use Sections 12(B) and (G).) Defendant asserts that by merely using Lush's website, Plaintiff manifested an "agree[ment] to be bound by and comply with" the Terms of Service, including Section 12's arbitration requirement and class action waiver. (Id. at 1.)

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., reflects a federal policy favoring arbitration. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Pursuant to § 2 of the FAA, "[a] written provision in any . . . contract . . . to settle by arbitration  . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see also Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 ("Like other contracts, however, [arbitration agreements] may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability."). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine

8

that (1) there is an agreement to arbitrate and (2) the dispute
at issue falls within the scope of that agreement." Century
Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d
513, 523 (3d Cir. 2009). Only after a court finds that an
agreement to arbitrate claims exists and covers the parties'
dispute may it compel arbitration. 9 U.S.C. § 4.

The question of whether the parties agreed to arbitrate is
governed by state law principles regarding formation of
contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S.
938, 944 (1995).[3] "An agreement to arbitrate, like any other

---

[3] In this case, Defendant argues that California law applies to
the question of whether a valid agreement exists because Section
12(B) of the Terms of Use provides that "Lush and you agree,
however, that the State of California or federal law shall apply
to and govern, as appropriate, any and all claims . . . arising
between you and Lush regarding these Terms and the Site . . . ."
Plaintiff fails to adequately address the question, asserting
only that "Defendant has made no argument explaining why
California law would be reasonable to apply given that Defendant
has freely conceded that it was organized in Nevada, and its
principal place of business is British Columbia, Canada.
Plaintiff lives in New Jersey and made his purchase while in New
Jersey." (Pl. Br. at n. 2.) Presumably, Plaintiff means to take
the position that because she did not read or assent to the
Terms of Use, the choice-of-law provision, like the arbitration
requirement in its entirety, is unenforceable against her.
    To the issue of whether a contract has been formed, the law
of New Jersey will apply. It would be anomalous to apply a
contract's choice of law provision unless it has first been
ascertained that the disputed contract exists. Ordinarily, a
federal district court sitting in diversity applies "the
conflicts of law principles of the forum state." See Klaxon v.
Stentor Elec. Mfg. Co., 313 U.S. 487, 497 (1941); see also Rohm
& Haas Co. v. Adco Chem. Co., 689 F.2d 424, 429 (3d Cir. 1982).
This Court therefore applies New Jersey's two-part "most
significant relationship" test described in the Restatement

contract, must be the product of mutual assent, as determined
under customary principles of contract law." Atalese v. United
States Legal Services Group, L.P., 99 A.3d 306, 312-13 (N.J.
2014) (citing NAACP of Camden Cnty. E. v. Foulke Mgmt., 24 A.3d
777, 790 (N.J. App. Div. 2011)). "Mutual assent requires that
the parties have an understanding of the terms to which they

---

(Second) of Conflict of Laws. Maniscalco v. Brother Int'l (USA)
Corp., 709 F.3d 202, 206 (3d Cir. 2013) (citing P.V. ex rel.
T.V. v. Camp Jaycee, 962 A.2d 453, 460-61 (N.J. 2008)). In the
first step, the Court must determine whether an "actual
conflict" exists "by examining the substance of the potentially
applicable laws" with an eye towards whether a "distinction"
exists between them. Id. at 460 (citing Lebegern v. Forman, 471
F.3d 424, 428-30 (3d Cir. 2006)). However, in the absence of an
actual conflict, or in the presence of only a "false conflict,"
where the potentially applicable laws would produce the same
result on the particular issue, the Court avoids the choice of
law question entirely and applies New Jersey law. Lebegern, 471
F.3d at 428.

Moreover, with respect to whether a valid agreement exists
between the parties, the Court's analysis ends with the first
prong of the New Jersey test because there is no conflict
between New Jersey and California law on this question. Compare
Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992) ("A
contract arises from offer and acceptance, and must be
sufficiently definite that the performance to be rendered by
each party can be ascertained with reasonable certainty. Thus,
if parties agree on essential terms and manifest an intention to
be bound by those terms, they have created an enforceable
contract.") (internal citations omitted) with Donovan v. RRL
Corp., 27 P.3d 702, 815 (Cal. 2001) ("An essential element of
any contract is the consent of the parties, or mutual assent.
Mutual assent usually is manifested by an offer communicated to
the offeree and an acceptance communicated to the offeror. An
offer is the manifestation of willingness to enter into a
bargain, so made as to justify another person in understanding
that his assent to that bargain is invited and will conclude
it.") (internal citations omitted). Accordingly, New Jersey law
will be applied to the formation-of-contract issue.

agreed." Id. Inherent in the Atalese standard is proof of the manifestation of each party's acceptance of the terms.

Plaintiff takes the position that there is no valid agreement between the parties because she did not have any actual knowledge of, and thus could not have assented to, the Terms of Use on Defendant's website. (See Declaration of Norris Hite at ¶¶ 4-6.)  Plaintiff urges this Court to distinguish between "clickwrap" and "browsewrap" websites[4] and find that because the Terms of Use are hidden in an inconspicuous hyperlink at the bottom of Defendant's homepage, and because Lush's website does not require users to "take affirmative action to manifest their assent" to the Terms of Use, the agreement to arbitrate is not enforceable as against her.

New Jersey courts apply the "fundamental precepts" of contract law to determine the enforceability of contracts formed over the internet between companies and their users. James v. Global Tel*Link Corp., Civil No. 13-4989, 2016 WL 589676, at *5 (D.N.J. Feb. 11, 2016). "[B]efore binding a party to the terms

---

[4] Judge Hillman recently explained the difference: "In a 'clickwrap' agreement, all of the terms of an agreement are collected in a dialog box and a user must click on an icon that affirmatively demonstrates assent to be bound by the terms and conditions. In a 'browsewrap' agreement, by contrast, the terms of use are contained in a hyperlink, but the user can utilize a provider's service without ever knowing that such services are being provided subject to the terms and conditions." Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC, Civil No. 14-6115, 2015 WL 4476017, at *5 (D.N.J. July 21, 2015).

and conditions of a hyperlinked agreement, courts must first look 'to whether users were provided with a reasonably conspicuous notice of the existence of contract terms' and whether the user registered an 'unambiguous manifestation of assent to terms.'" Singh v. Uber Tech., Inc., -- F. Supp. 3d --, 2017 WL 396545, at *4 (D.N.J. Jan. 30, 2017). Where a website provides "reasonable notice" of the hyperlinked agreement, users will be bound to it "even if the party did not review the terms and conditions of the hyperlinked agreement before assenting to them." Id.

We therefore first examine whether the website gave reasonable notice of the Terms of Use. New Jersey courts apply a standard of "reasonable notice" to the manner in which contract terms are displayed in determining whether they are enforceable or not. Hoffman v. Supplements Togo Mgmt., LLC, 18 A.3d 210, 217 (N.J. App. Div. 2011). This includes looking to "the style or mode of presentation, or the placement of the provision." Id. (citing Caspi v. Microsoft Network, L.L.C., 732 A.2d 528, 532 (N.J. App. Div. 1999)). "[C]ourts have been more amenable to enforcing browsewrap agreements where the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound by the terms of use." James, 2016 WL 589676, at *6 (citing Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1177 (9th Cir. 2014)).

12

Here, "the design and content of the website and the agreement's webpage," Nguyen, 763 F.3d at 1177, demonstrates that Lush's website does not conspicuously display the Terms of Use. The Terms of Use hyperlink can be found at the very bottom of Defendant's website, in smaller typeface than other nearby links, in a tiny fragment that states: "© 2002-2016 LUSH North America. View our Terms of Use and Privacy Policy." (See Ex. A to Def. Br. at p. 11; Ex. 1 to Pl. Request for Judicial Notice [Docket Item 11-4 and 11-7.]). Nothing requires the user to open, let alone read, the terms before conducting a transaction they purport to govern. Whether the Terms of Use are worded in a clear and unambiguous manner, in accordance with Atalese, is immaterial when the user is not meaningfully exposed to those Terms in the first place.

The Court finds that the Terms of Use were not so conspicuously placed that a reasonably prudent user of Defendant's website would have been on notice of the terms contained therein. See, e.g., Specht v. Netscape Comm. Corp., 306 F.3d 17, 23 (2d Cir. 2002) (licensing terms that "would have become visible to plaintiffs only if they had scrolled down to the next screen" are unenforceable); In re Zappos.com, Inc. Customer Data Sec. Breach Litig., 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) ("Here, the Terms of Use hyperlink can be found on every Zappos webpage, between the middle and bottom of each

13

page, visible if a user scrolls down. . . . The Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage among many other links."); Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (plaintiff submitted a statement that "she was never advised of the Terms and Conditions and could not even see the link to them without scrolling down to the bottom of the screen – an action that was not required to effectuate her purchase.").

Moreover, this website is inadequate to form a binding contract with the user because it also fails to satisfy New Jersey's requirement of assent to the Terms. Atalese, 99 A.3d at 312-13. As noted, the Terms are not displayed unless the user finds and clicks on an obscure link at the bottom of the page. The purchase can readily be completed without the user viewing the terms which relinquish important and customary rights of trial by jury, court access, statutory periods of time to bring actions, availability of damages and remedies provided by statute, and to bring or join a class action. Without viewing, the user can have no knowledge of the terms, including these waivers.

Likewise, the website's admonition to users to read the terms is not on the home page but is only on the "Terms of Use" section that appears if the hyperlink is noticed and selected. Where the defendant here argues that it told users to read the

14

Terms, it has no proof that this user did so, let alone that the user manifested acceptance. It could easily have alerted the user to the important rights that the user is being asked to waive in summary form, and urge the user to examine the detailed Terms via hyperlink, but it did not do so. It could have structured the transaction so that the user manifests acceptance by clicking "I accept" after the Terms are displayed, but it did not do that either. In short, it is insufficient under New Jersey law to simply state, as in this case, in an inconspicuous manner that one may "Read the Terms of Use" with a hyperlink underline for "Terms of Use." Absent knowledge and assent to the Terms of Use, Plaintiff cannot be bound by the provisions, including the mandatory arbitration clause. Accordingly, Defendant's motion to compel arbitration is denied.[5]

### B. Defendant's Motion to Dismiss

In the alternative, if its motion to compel arbitration be denied, Defendant seeks to dismiss the Amended Complaint with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). According to Defendant, Plaintiff has not read or been harmed by the Terms of Use and lacks standing as an aggrieved consumer; secondly, Defendant argues that Plaintiff

---

[5] Denial of a motion to compel arbitration under Rule 12(b)(6) does not foreclose a defendant from presenting a motion for summary judgment with evidence that the plaintiff consented to arbitration. Guidotti v. Legal Helpers, 716 F.3d at 774-76.

points to nothing in its Terms of Use that violates the TCCWNA, N.J.S.A. 56:12-14 et seq. Because Plaintiff has plead that she was unaware of the Terms of Use and has demonstrated no way in which she has been harmed by them, the Court finds she is not an aggrieved party within the zone of protection of the TCCWNA and, for the reasons that follow, the Court will grant Defendant's motion to dismiss.

"The TCCWNA . . . prohibits a seller from entering into a contract with a consumer that includes any provision that violates a federal or state law." Bosland v. Warnock Dodge, Inc., 933 A.2d 942, 949 (N.J. App. Div. 2007); see also Kent Motor Cars, Inc. v. Reynolds and Reynolds Co., 25 A.3d 1027, 1044 (N.J. 2011) ("The purpose of the TCCWNA . . . is to prevent deceptive practices in consumer contracts by prohibiting the use of illegal terms or warranties in consumer contracts."). The statute provides in relevant part:

> No seller . . . shall in the course of his business offer to any consumer or prospective consumer or enter into any written contract or give or display any written consumer warranty, notice or sign . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller . . . as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

N.J.S.A. 56:12-15. Thus, to state a claim under the TCCWNA, a plaintiff must allege each of the following: (1) the plaintiff is a consumer within the statute's definition; (2) the defendant

16

is a seller; (3) the defendant offers a consumer contract or
gives or displays any written notice or sign; and (4) the
contract, notice or sign includes a provision that "violate[s]
any legal right of a consumer" or responsibility of a seller.
Mattson v. Aetna Life Ins. Co., 124 F. Supp. 3d 381, 392-93
(D.N.J. 2015) (citing Watkins v. DineEquity, Inc., 591 Fed.
Appx. 132, 135 (3d Cir. 2014) and Bosland, 933 A.3d at 949). The
TCCWNA does not "recognize any new consumer rights but merely
impose[s] an obligation on sellers to acknowledge clearly
established consumer rights." Shelton v. Restaurant.com, 70 A.3d
544, 552 (N.J. 2013).

As a threshold matter, the parties dispute whether
Plaintiff is the type of "consumer" that the TCCWNA intends to
protect. Section 15 of the TCCWNA defines a consumer as "any
individual who buys, leases, borrows, or bails any money,
property or service which is primarily for personal, family or
household purposes." N.J.S.A. 56:12-15. However, Section 17
establishes that "Any person who violates the provisions of this
act shall be liable to the aggrieved consumer for a civil
penalty of not less than $100.00 or actual damages . . . ."
N.J.S.A. 56:12-17.

Defendant takes the position that, although Plaintiff
purchased an item from Lush's website, she is not an "aggrieved
consumer," and thus cannot establish liability under the

17

statute, because she concedes that she did not read the
allegedly unlawful Terms of Use. Defendant points to two cases
from this District, Shah v. American Express Co. and Baker v.
Inter Nat. Bank, for the proposition that a person who has not
read the allegedly unlawful notice or contract she challenges
cannot be aggrieved. In both cases, Judges Pisano and Rodriguez
determined that a plaintiff who had not bought anything from the
defendant was not an "aggrieved consumer." See Shah v. American
Express Co., Civil No. 09-622, 2009 WL 3234594, at *4 (D.N.J.
Sept. 30, 2009) ("There is no evidence that Plaintiffs in any
way responded to the Defendant's solicitation, opened a credit
card account, used the credit card or at any time were subject
to the card's fees. Without allegations that Plaintiffs were
consumers who bought, leased or borrowed any money, property or
services from the Defendants, the Plaintiffs do not have a claim
as an aggrieved consumer under TCCWNA."); Baker v. Inter Nat.
Bank, Civil No. 08-5668, 2012 WL 174956, at *10 (D.N.J. Jan. 19,
2012) ("Under the plain language of the statute, however, the
Court cannot find that Plaintiff meets the statutory definition
of an aggrieved 'consumer' because she did not purchase the gift
card from Defendants."). These cases only get us halfway there,
because the Court must accept as true, at this stage of the
litigation, Plaintiff's allegation that she purchased an item
from Defendant's website. They do not address whether a

18

plaintiff who purchased an item but is not bound by the allegedly unlawful provisions of the contract is "aggrieved."

Nonetheless, Plaintiff has not alleged an injury sufficient to confer standing under the statute. In this case, Plaintiff alleged, and this Court accepts, that she did not read the Terms of Use and that she has no claim against Lush that would be limited by these provisions. Defendant likens the "aggrieved consumer" inquiry to the analysis the Supreme Court recently undertook in Spokeo, Inc. v. Robins in determining whether a plaintiff had Article III standing to sue under a particular statute, a comparison the Court finds useful. There, the Supreme Court held that the plaintiff had not established injury-in-fact because she had alleged only a "bare procedural violation" of the statute, without alleging a concrete harm that could flow from that violation. 136 S. Ct. 1540, 1550 (2016). The Third Circuit has since distinguished between plaintiffs who allege "mere technical or procedural" violations of a statute, and plaintiffs who allege that they have suffered the harm that the statute seeks to protect against. See In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 638 (3d Cir. 2017) (Plaintiffs alleged "the unauthorized dissemination of their own private information – the very injury that FCRA is intended to protect. There is thus a de facto injury that satisfies the concreteness requirement for Article III standing."). District

Courts in this Circuit have accordingly found that a consumer has standing to bring a TCCWNA claim where he alleges that a contract limits his ability to vindicate a clearly established right. See Luca v. Wyndham Worldwide Corp., Civil No. 16-746, 2017 WL 623579, at *5 (W.D. Pa. Feb. 15, 2017) ("Unlike in this case, however, the plaintiffs in those cases identified no other underlying legal right or remedy that the website's provisions placed at risk. Instead, in each of those cases, the plaintiff's suit relied solely on an alleged 'technical' violation of the TCCWNA – a quintessential procedural violation, divorced from harm. In contrast, the present case involves a tangible injury, or risk of injury – to Plaintiff's asserted right to redress under the CFA."); Hecht v. Hertz Corp., Civil No. 16-1485, 2016 WL 6139911, at *6 (D.N.J. Oct. 20, 2016) (Plaintiff alleging suit under TCCWNA Section 16 did not have standing because he "does not allege that she event viewed (let alone, relied upon to his detriment)" the website in question.).

Here, because Plaintiff did not assent to the Terms of Use, they simply do not bind her as a matter of contract law. Because Plaintiff does not seek to vindicate any underlying rights secured by the TCCWNA – i.e. she is seeking only to bring the Terms of Use into accord with what she believes New Jersey law requires, not to actually bring a suit or recover damages which she believes are unlawfully barred by the Terms of Use – she

does not have standing to sue. Moreover, because the Terms of
Use were not displayed to her, she cannot claim harm from their
existence in a hidden corner of the Lush website. Based upon the
allegations in the Amended Complaint, the harm that Plaintiff
has suffered from the allegedly unlawful limitations of
liability in the Terms of Use is metaphysical at best. Her
strongest allegation of harm is that she was present and made a
purchase on a website that, unbeknownst to her, had terms that
she now claims are objectionable under the TWCCNA.

There is a second reason why Plaintiff lacks standing to
challenge these Terms. Plaintiff has suffered no cognizable harm
because, as Plaintiff has established in avoiding the
arbitration clause above, these Terms do not bind this
Plaintiff. Where the alleged contract fails for lack of mutual
assent, it follows that the Terms comprising that contract
become a nullity as to the individual. Atalese, 99 A.3d at 312-
13. Whether or not the nullified contract contained terms that
would have violated New Jersey law does not matter to this
Plaintiff as a matter of law because she cannot allege that such
terms have harmed her. Fundamentally, where the facts and the
law compel the finding that Plaintiff did not assent to these
Terms, she lacks standing to contest the actual provisions of
the non-agreement because there is no concrete harm to
Plaintiff.

For these reasons, Plaintiff has not alleged concretized harm of the sort that the TCCWNA was meant to prohibit and she lacks standing under the TCCWNA to challenge these terms. Defendant's motion to dismiss the Amended Complaint with prejudice is granted.

## V.   CONCLUSION

An accompanying Order will be entered finding that Plaintiff has not assented to arbitration and further finding that Plaintiff cannot maintain this action because she has not suffered actionable harm. As a result, this case will be dismissed.


 **March 21, 2017**                                  **s/ Jerome B. Simandle**
Date                                              JEROME B. SIMANDLE
                                                  Chief U.S. District Judge